And we'll call the next case. Franklin Benjamin v. Department of Public Welfare. Good morning, Your Honors. May it please the Court. My name is Carl Solano. I am a 3685, but I am here to argue on behalf of the appellants in both appeals. Judge Fuentes, may I reserve four minutes for rebuttal? Yes, sir. Thank you, Your Honor. Your Honor, the residents of these institutions, the state centers, are some of the most vulnerable members of our society. They are, in at least 75% of the cases, profoundly disabled. That means that they have the mental abilities of infants and toddlers, and I think it is very important that we keep that in mind as we consider the issues here. More than 80% of them don't have that, but I believe plaintiff's counsel has put it at somewhere around 20%. And so we are here in a situation where an action was brought under the Americans with Disabilities Act by five individuals who wish, under the ADA, to be moved out of the state centers to another facility. No one disagrees with that. May I ask you what it is that you are this court to do? We are asked, I'm sorry, Your Honor. Is it to set aside a settlement and to decertify a class? Is that the thrust of your request? Yes, Your Honor. Well, at this point, you're really asking that you be allowed to intervene in the district court, which you were denied. I mean, that's the order you appealed from. We appealed from both that order and from the order approving the settlement. We contend that we are entitled to appeal from the order approving the settlement because we are members of the class. Well, if you prevail here, is it your position, one, that we remand it to the district court to include you as a proper person to intervene without deciding the merits of what the class should be or what the settlement should be? Or is it your position that on appeal we should not only adjudicate that you are a proper person to intervene but also resolve the remedy which the merits and the remedy which the district court did not have it before because you had it before but without your presence? Your Honor, the district court had before us, before it at the time of the settlement approval hearing, the objections that were made by us and a hundred some odd other objectors in which we raised these issues. So these issues were before the district court. The district court heard them. It decided that it sort of entertained them, sort of did not because maybe we're members of the class and maybe we're not members of the class. We submit, Judge Cowen, we are members of the class. We're properly here and the court has the power now to order that it was improper to Certainly, if the court doesn't do that, we welcome a remand to make us parties. But we don't think it's necessary. I'm sorry, Judge Fletcher. Why is it, Mr. Meek, correct that this issue, this very issue about whether you should be a member of the class or not was already decided by our court? And why is that not the law of the case? Your Honor, the prior decision by this court was a decision on intervention. It was not a decision on It was a decision on intervention. It was not a decision on the propriety of class certification. Mr. Solano, you're back here on a second attempt to intervene. Are you not? I'm sorry, Your Honor. You're back here on a second attempt to intervene. I know you weren't. The party you're representing, both as guardian and counsel, was not part of that first appeal. But yet, your interests are similar. Our interests are similar, and, Your Honor, we're back here on a second attempt to be heard. But we are back here on a second attempt to be heard in an entirely different context. Okay, let me just stop you right there at that point. It seems to me, and you chose to use the word be heard as opposed to intervene. It seems to me, not only are you being heard today, but the district court heard you and took into consideration many of the objections that you posed. Judge Fischer, the district court allowed us to argue at the settlement approval hearing. The district court then issued an opinion in which it said that the objections that it raised were by non-class members and, therefore, did not need to be entertained. And so, I have to be candid, Judge Fischer, I'm not sure to what extent the district court heard us and didn't, because the court's opinion was ambiguous on that point. We were there, and yet it's, he said that he didn't need to hear us. We believe, Your Honor, we can cut through all of this just by the fact that you're right. We're here being heard today. We're here being heard today because we have standing to be heard today, because we are class members. We are class members, if I may return to Judge Fuente's question, because this case has changed dramatically since this court's last decision. That decision was entered before there was a settlement agreement. That decision was entered at a time when this court said in its opinion that this case was going to bind, and this is this court's words, only those who affirmatively expressed their desire to be discharged. Since that time, the parties entered into a settlement agreement. It binds everybody. And we get to the meat of what interests me. You represent five plaintiffs. Is that right? It's, I believe, eight, Your Honor, but, okay, yes. But as a class, how many would you count in your class? The plaintiff's class consists of, I believe, Your Honor, all state center residents, which are approximately 1,100 to 1,200 people. Is there an interest that you are promoting for your clients that was discharged? Not adequately represented in the class. Yes. Well, our interest was not adequately represented because the only interests that were adequately represented were those of those members who wished to be removed from the state centers. There were a hundred and some objections stating not only do we not want to be removed from the state centers, but there are aspects of this settlement. Wasn't there a provision in the protocol that would allow you to opt out of that movement to community centers by expressing your desire not to be moved? Your Honor, it is a provision that is subject to a number of contingencies. It says that we are not currently member, we, if we do not currently desire to be removed, we don't have to be, but we may be in the future if we do desire to be removed. And then it sets up a protocol that says... Don't you really have the best of both worlds here? Your Honor, you know, when I was told, when I read the plaintiff's position that said, you know, you're not a part of this class, and this doesn't affect you at all, and therefore, you get away scot-free and don't worry about it. I can't tell you how tempting it was to accept that and walk away. But it's not true. This settlement binds everybody. It subjects us to annual reviews under which we are required to state opposition, and if we don't appear at those reviews, that does, all of a sudden, my sister is deemed to have agreed to the removal because I wasn't there to speak for her, and she's incapable of doing it. All right, but your sister is represented, and you indicated you're your sister's guardian. I am. So your sister at least has a guardian, and are going to assume that your sister is going to be spoken for. Your Honor, today my sister is going to be spoken for. One of the provisions of this agreement is if I die and I don't appoint a proper substitute, suddenly she's not spoken for. So my substitute right now is my wife. If we go on vacation, the plane goes down, she's not spoken for. Hasn't the legislature established that DPW will be the entity that will speak for those who don't have a guardian? Your Honor. Isn't that the role? No, I mean, we have to assume that the department that has been directed to manage this class is, in fact, going to speak properly for those individuals who don't have a guardian. Your Honor, the DPW, in appropriate circumstances, may speak for the residents under its care. But here, Your Honor, there is a conflict. DPW, the question is, what do these residents want and need? Some of these residents have ISPs prepared by professionals hired by By these residents, are you talking about all 1,200? I am. These residents, some of them, my sister included, have ISPs prepared by DPW professional staff that say it is inappropriate to move them out of the state centers to the community. And yet DPW's administrative personnel have stipulated that everybody can be moved anyway. Some of these residents may not want to move. DPW has declared that all residents are going to be deemed to move if they lack the sufficient capacity to answer the question. In order to be moved, you generally are placed on what's called a planning list? That's correct, Your Honor. I'm looking at a protocol, and you correct me if I'm mistaken, but it says that a number of parties are listed in the series of parties. I see about 10 different categories. But the last one says if one of these parties subsequently objects to the community placement, the resident will be removed from the state planning list. That's right, Your Honor. I think if you go down to something like the seventh bullet there, there are the parties who are incapable of objecting because they do not have the intellectual capacity to move them. So that person would not be removed from the planning list? That person would be removed. You're assuming that DPW would move a person that shouldn't be moved. Your Honor, that's what the protocol says. The protocol says that if you are incapable of answering this question, you have discussions. You'll be put on the list if you're incapable. Once you're put on the list, you're going to be removed. It doesn't mean you're going to be removed. You're assuming that they're going to close down the state centers. No, Your Honor, I'm assuming that the purpose of the list, as stated in the settlement agreement, is to list those people who will be removed. That's the purpose of the list. Right, and that's the kernel of your argument, that although at the merits section you may not have been a member of the class, at this point, by reason of the settlement, you are, at least should be, heard as concerning what the class should constitute and what any settlement should be, because people that can't speak for themselves will, by default, automatically be deemed to consent to being moved. Correct, Judge Cowen, that's correct. And that position could not be voiced prior to the settlement, which was reached in the district court. Exactly, Judge Cowen. Are you talking about the more seriously impaired individuals? I am, I am, Your Honor, which includes both those who are so impaired they can't understand and have no guardians. How big is that group? We, Mr. Meek, plaintiff's counsel, estimated at the settlement approval hearing that we're talking about 125 people currently, and then we have to talk about those whose guardians or family members die, pass away, become unavailable, because remember, Your Honor, many of these individuals were placed there by their parents some years ago who are now elderly and dying. What would happen if you were to prevail and we were to agree that the settlement has to be vacated, you go back into the class? Does that put a halt to all of this planning that has taken place? I mean, does that mean you've got to start back to square one? If Your Honor, if I'm understanding Your Honor's question, you mean if you vacate the class order and you vacate the settlement? You vacate the class, vacate the settlement. Your Honor, what it means is that those individuals who filed the suit and have asked to be discharged will be discharged. Any other individuals who ask to be discharged will be discharged. Any guardians or family members who ask to do so will be. But one of the important things about Olmstead, it's individualized. In other words, it's not preventing those who want to go to community centers from going to the community centers. Your Honor, we would not stand in the way of that at all. Okay. So actually, your position is, I don't want to keep it simple, but it's not complex. All you would be content with at this point, although you would want more, is if we remanded this back to the district court and say that it was an abuse of discretion not to include you as an intervener, a proper intervener, since the settlement agreement affects the people who you represent and you had a right to be heard concerning the settlement, because number one, people you represent are automatically, by default, going to make a choice which is impossible for them to make. And secondly, there's a divergence. There's only so much money in the pot, and the government can only spend so much for institutional care and so much for community care, and you have a right to be heard as to, to some extent, as to that division. Is that the point that you're making? Your Honor, I agree with every bit of that, but with one addition. We have a right to be heard on remand. One of the issues on remand is going to be class certification. Well, you could argue that if we remanded it back, we remanded it as to whether or not the class certification was apropos concerning what was before the court. I understand that, Your Honor, and that's correct. All I was going to say was that we believe the record is already clear and it's not going to change. And so we would ask, Your Honor, to pine by it. Otherwise, we'll be back here again. Mr. Solano, couldn't we eliminate those steps and assume that you should have been properly included and evaluate whether or not the class was properly certified, whether the settlement was fair, and whether it meets all the other provisions of Rule 23? Couldn't we do that based on the record in front of us? I believe you can, Your Honor. Would we be engaging here as an appellate court in fact-finding, which is not our province or our specialty? On this record, isn't your friend across the aisle going to say that this is something which is quintessential work for the district court? Your Honor, let's take the two issues separately. On class certification, I do not believe that you need to engage in any fact-finding because the essential issues on class certification are cohesiveness, issues having to do with whether the class definition are too amorphous. Most of those are questions of law. I don't think you need to do a lot of fact-finding there. And on the propriety of the settlement, the fairness of the settlement, we suggest, Your Honor, that the settlement provisions that have been agreed to, particularly with respect to those individuals who have no guardians and don't understand what we're talking about, is on its face presumptively unfair, particularly in light of what Judge Jones comments. Well, what should our decision be as to what the settlement class should be and the settlement should be, following from a proper description of the class, including the people you represent? What would you write if you were writing the opinion as to what the settlement should be? Your Honor, I think the first thing you need to do is to address whether this type of class could be certified, and I think the answer is it could not. If the class is … You do away with the case completely. And I think you do away with the class action at that point. That's correct. It doesn't need class certification. That's correct, Your Honor. So if we didn't … that's one option. If we did not want to go that way and we say that there is a class here and you should be included, what do we say is the proper settlement that this Court should … Your Honor, the propriety of the class is tied to the remedy requested. So, for example, it may be proper to form a class which requests that the State institute proper procedures, an Olmstead plan, procedures that will take into effect the desires of all residents, whether institutional care or community care, and have procedures in place to place them. I think, Your Honor, that if that is the class that is defined, so it's not based on the relief requested, discharge, but instead it's based on the procedure, I think then, Your Honor, the settlement agreement would be put in place a proper procedure. Is your primary goal to get back into the class, at least to have a seat at the table, so that you can have input with respect to the protocols? My primary goal is to recognize that Olmstead requires individualized assessments and, therefore, there should not be a class action. Could you argue that in the District Court? If we remand it back to the District Court saying you were a proper intervener, they should hear from you and determine whether or not the class is properly constituted under the rule. Judge Collin, we certainly could and would argue that to the District Court if that is necessary. You say that we can do it here and there's no additional facts. We can do it right here and now. That's our position, Your Honor. Okay. You have time on rebuttal, so we'll get you back on rebuttal. Thank you. Thank you. We have to hear from the other side. Good morning, Your Honor. May it please the Court, my name is Robert Meek. I represent the plaintiff's appellees. I am going to take eight minutes of our 15 minutes, and Doris Leisch, who is counsel for the defendant appellees, will use the remaining 15 minutes, if that is satisfactory. Yes, Your Honor. Your Honor, let me get right to the point that Mr. Solano was striving, and that is whether, in fact, his clients are class members. The District Court found unequivocally they were not class members. And, in fact, in this court before. Even after the settlement? Your Honor, the settlement was actually the same as the proposed settlement. Did they find that they were improper class members even after the settlement? Yes, because he didn't let them intervene, and he found that they were not class members. Both of those things the District Court found, yes. Well, yes, but by reason of the settlement, that group of people are unquestionably going to be affected by the settlement. Your Honor, I respectfully disagree that they're unequivocally going to be affected. First and foremost, the annual reviews that Mr. Solano is so lathered up about happen all the time every year anyway. Second of all, we're talking about sometime in the future, speculatively, that his client might not have a guardian. But that is easily remedied, as Judge Staples said in the previous opinion, that they merely have to create substitute guardians. Well, the previous opinion dealt with the merits of the case, not with the remedy that's constituted. The remedy that's been put in place here makes a default choice by a person who is incapable of making that choice, many of whom are not represented as the appellant in this case is represented. Your Honor, that was before the Court before as well. And, in fact, Mr. Solano argued that the concern they had was they would become wards of the state because they would become part of the default group, and the Court didn't pay any attention to that argument at that time, and neither should this Court. Wait a minute. You're saying people affected by a settlement in a class action matter have no say in whether or not they're affected or not? Mr. Solano was heard, and his comments and argument in cross-examination of witness was certainly heard by the district court. Well, let me ask this. He wasn't allowed to intervene as an intervener. Correct. He was heard, but not as an intervener. Correct. What prejudice would occur to the plaintiff's appellees if he had been heard as an intervener? What prejudice would you have suffered? The prejudice that Mr. Solano has already told you he's going to do, he's going to decertify the class if he can. That's not prejudice. That's a position he's taking. Well, it prejudices my clients that he's going to come in. If he gets in, he decertifies the class, and he's not a proper intervener because he has no interest at stake. Wait. That's not legal prejudice. That's what the resolution of the litigation should be. Let me tell you what the real prejudice is, Judge. What prejudice would you suffer? Legal prejudice. Not that the court with his presence may decide it differently, but what prejudice would you have if he were heard in the district court? To what end is he being heard? To argue that it's not appropriate for some people to go into the community? That's already been decided by the district court, and the facts are there, undisputed facts, that everyone can be served in the community. As to the persons who are not represented by guardians, I think Judge Fuentes or Judge Fisher mentioned that under the statutes that control these matters, 50 per burdens, 4417 through 20, and a regulation 55PA code 6000.1018 makes the facility director a guardian of those individuals. And that facility director has the same power and authority as Mr. Solano has with regard to his sister. So they are not unprotected. Their interests are protected. How are they all not represented by a guardian? They're all represented by guardians, Your Honor. If they don't have a guardian, the state is representing them. Yeah, but then automatically there's a default as to what their choice is, and these are people who are unable cognitively to make a choice. Your Honor, it's not a – well, first of all, the choice is not affirmative. As Olmstead says, it's whether there's opposition or not opposition. First of all, the Justice Department spoke to that. So they're unable to make an opposition. Correct. But the state is entitled to have a policy, and the facts support that policy, that people who can't make a decision are – the guardian is the state, the facility director under the statutory plan, and that guardian can make the decision for them. And the problem is that Mr. Solano just doesn't like the policy. The policy is there. The state is entitled to have that policy, and this record correctly interpreted by the district court in this court in the last appeal found that it's always appropriate for any person with intellectual disability to serve the community with appropriate supports and services, and that's the lynchpin to it all, appropriate supports and services. Mr. Meek, it seems to me that there's not really that much disagreement between the parties. There is, but there isn't. Mr. Solano had a chance to speak here today. He had a chance to speak before the district court. He cross-examined witnesses. There's a dispute internally as to how some of the processes work, but isn't the real question here for us as an appellate court as to whether or not Mr. Solano and the people he's representing have standing to come before us to argue the issues that have been decided by Judge Jones? Isn't that really the question? Sure, that was – well, that would have been my first point had I been able to make it, Your Honor, is that they don't have standing because they're neither class members nor are they proper interveners. They're not class members because they currently oppose placement, and the procedures of the protocol don't really have an impact in creating them as class members. Everything else we're talking about is irrelevant to the decision we have to make, is it not? Well, it's not irrelevant, Your Honor, because if you, in fact, determined that they are proper parties before this court, then we would have to proceed to the other issues regarding class certification and intervention, whether the court ruled correctly to determine that they were not class members nor interveners. Does that mean that you have to favor transfer in order to be a class member? Do not have to favor, you just not oppose. It's the language of Olmstead, and the Justice Department supports that, and it's the body that is the entity which is given the authority to interpret the ADA Title II, under which this case was brought. So if, after this hearing, Mr. Solano's client, the people he represents, come back and say, we no longer oppose this plan, do they become members of the class? Correct. That's all they need to do? That's correct. They don't want to do that, Your Honor. What they want to do is get rid of the class, and contrary to Mr. Solano's argument, if the class is decertified, not only will my class members, 200 and odd some of them, which are the persons who are not opposed in the default group, but also my main plaintiffs can't even prosecute a claim, because Olmstead teaches that you can't bring individual cases in an Olmstead action, because that would allow what's called queue-jumping, and that the whole point of Olmstead was to require the states to have a comprehensive plan to deal with everybody, and queue-jumping undermines that. Mr. Meek, let me ask you this, and maybe you more clearly focus what you want to do for me here. Isn't really the certification of this class and the settlement, shifting the decision from the Department of Public Welfare to the federal courts, isn't that really what's happening here? I don't think so, Your Honor, because the Department of Public Welfare is making all the decisions that need to be made. In fact, that's why it's appropriate that the court found as it did and left the remedy to the experts that is the Department of Public Welfare. The Department of Public Welfare is making all the decisions. We're not asking the court to make a decision on appropriateness. We're not asking the court to make a decision on opposition. I'm sorry, Your Honor. I agree, Your Honor. I'm sorry. Okay. I do recognize I was speaking over you, but I was trying to get you to stop. But DPW has a role because the court gave them a role. And DPW has a role because they agreed in court to that role. But without this class certification, it would go back to DPW would make a determination and as long as they're in compliance with Olmstead, it would be their determinations which would stand as to where the various patients reside and when and if they would be moved to the community. Right, and that is exactly what we're asking this court to simply affirm, is that they can make those decisions under the statutory scheme, that they can speak for people who cannot speak for themselves because they are the guardian. Okay, but that's the point. Because the default assumes individuals who cannot voice a preference are not opposed to moving, that's what the settlement says, how do you avoid the possibility that those who cannot voice a preference actually prefer to stay in ICF? Your Honor, I'll answer that with another question. How do you suppose then, Your Honor, on the other side, how can you presume that a person who can't speak for themselves doesn't want to leave? You don't want us to have to answer that. No, I'm just, rhetorically, why is there a presumption because that is, I'm sorry. I asked you a question. I think it's rather simple, easily answered. How, you want me to repeat it for you? Please, Your Honor. Because the default assumes individuals who cannot voice a preference are not opposed to moving, how do you avoid the possibility that those who cannot voice a preference, such as the appellants, actually prefer to stay in ICF? Your Honor, you can't. You also can't cut it the other way. You can't tell that they don't want to leave. So the problem is that's the guardian. Excuse me, excuse me. Certainly. So by default, they're making a choice which they've never made. Your Honor, they are represented by a guardian, the facility director who is making the choice for them, just as Mr. Solano is making the choice for his sister. You have a procedure in place where it can be determined on an individual basis whether that resident should go to a community center or should stay in an intermediate facility. As to whether it's appropriate, Your Honor, or whether they are opposed or not opposed. Either way, is there a procedure where an intelligent decision can be made on behalf of that resident as to what's in that resident's best interest? Absolutely. Stay where you are or you should go to a community center. Absolutely. And that's part of the whole process that's undertaken by the department, not only in this case, but in every case that they make the determination that this person's appropriate and they believe that everyone's appropriate for service. That's together with the guardian or family if that's available. Right. If the guardian's opposed, they're not going to do anything. Or the family member's opposed, they're not going to do anything. And the planning process includes everyone. So in other words, if Mr. Solano opposes for his sister, then that's it. That person is not going to go to a community facility. Correct. And as to the opposition, again, Your Honor, the decision-making is left in the default group, Judge Cowan, is left to the facility director under state law. That's who's the person who's supposed to make the decision. He was talking about the importance of an individualized assessment. There is the protocol. It does go through an individualized assessment. And if I may, the protocol goes to, although this is partially what Ms. Bleich will speak about, the protocol has been underway for a year or so. And, in fact, what happens is every individual person is interviewed with a person who is very familiar with them from the facility, who's an expert in intellectual disability services, and they assess whether the person first can even understand what they're talking about. Is there not a way to accommodate his interests without having to undo the entire class? His interests are being accommodated, Your Honor, because this does not affect him because he's still opposed to community services. So he's not affected. Are you saying that people that have never made a choice and cannot make a choice are unaffected by this? No, Your Honor, I'm not saying that. I'm saying Mr. Solano is unaffected because he is making a choice, and he doesn't represent those people. People, if someone is there who is incapable of making a choice, they have no guardian, even if the guardian asked them, there could be no choice. By default, they would automatically make a choice for ICF, correct? That's the state's policy, Your Honor. All right. Let me ask you something. I take it there's so much money involved, you can only spend so much for institutional care and so much for community care. Why shouldn't these people who are going to be moved have some say, at least at the district court level, as to, you know, the state wanting to move everyone into community care and saying, well, you know, we want to stay in the state care. We don't want to be in the community. But they are given that opportunity, and Mr. Solano and his clients have used that opportunity to oppose. No, they're not given that. By default, they're moved into community care. Only those who have no guardian are family members. And again, Your Honor, it's not a default, which is not a term I would have used, but there are people who have been cared for by the state for years and years, people who know them, people who understand them. And the people that are making the decision whether they should move into a community services are those very same people. The facility director is the operative entity, but he is supported by professional judgment of the staff of those facilities that make those determinations. And the Olmstead Court said the courts must defer to professional judgment. But the courts also, the Supreme Court in Olmstead also said that they're going to defer to the state's availability of resources. Your Honor, I don't think, if you look at Judge Staples' decision in the last go-around, their interest in fundings was not relevant as far as he was concerned. The fact it might cost money, that's not an issue here. It's not. If the state spends money for institutional care, they're going to have less for the people that stay in state care. Your Honor. Not only is it an issue, it might be what this whole case is about. Your Honor, well, I respectfully disagree, and I rely on Judge Staples' reasoned opinion in this case before that the appellants don't have any right for a particular amount of funds. They don't have a right to funds at all. And that the state is entitled to use its money the way it wants to. It's their program. I'm sorry, Your Honor. Thank you very much. Thank you, Your Honor. Ms. Leisch. Ms. Leisch, following up where Mr. Meek left off, why isn't the department that you represent perfectly capable, working with the governor and the legislature, to determine which funds will be used for outpatient care, what funds will be used for institutional care? Well, Judge Fischer, we did make that argument before the district court, and unfortunately on motions for summary judgment, district court rejected it and said that we had by- You didn't appeal that. No, we did not appeal it. We guided, let's say, by this court's decision in Frederick L., took the district court's decision to heart, saying that it did not have the plan that we had submitted to raise our fundamental alteration defense, didn't have the specific benchmarks, both with respect to the number of people in the time frame, for moving people out of institutions. And we didn't think, frankly, that we would have a basis on which to appeal, other than to ask the court to reconsider Frederick L. Well, but Mr. Solano with his clients are here today to say that the district court made a mistake in approving this settlement and is asking us to send this back for the reasons that are stated, which would certainly give an opportunity to relitigate this whole question as to who's going to have a say in the future planning for deinstitutionalization. Well, Judge Fischer, I'm not sure that I understand the question because, in fact, the department did have quite a great say in the negotiation of the settlement agreement, and the plaintiffs didn't get everything that they wanted. The big thing that the plaintiffs got that was different from what the department had intended to, or did submit, actually, as part of its effectively working, comprehensive plan to move people out of the state centers was that the department hadn't identified the number of people and the time frame within which people would move and also left it pretty much up to whether or not funding would be available, and the district court said that that was unacceptable. And so basically what the settlement agreement does is put those, modified what the department had submitted to put those benchmarks and that definiteness, for lack of a better way of saying it, into the plan. Now, one of the things that I do want to bring to the court's attention, just to avoid confusion, Mr. Solano and Mr. Hoffert do not represent the people who are unable to speak and have no guardians or family members. The people who they represent, in fact, have guardians or other family members. Actually, I think at this point all of them are guardians. So they are not representing, for example, if the court were to remand back to the district court, they don't represent those people. And in fact, as Mr. Meek has already pointed out, who does represent those people by state law, both statute and the Department of Public Welfare's statement of policy, is the facility director at each one of the centers. So you think, going back to my initial question to you, you think that the settlement as it was agreed to provides DPW with an appropriate role moving forward? I absolutely do, Your Honor. And the reason that I do is because it leaves to the department the discretion to plan for, as is its role, the people who are going to be moving out of the state centers. You have 1,200 people now in the state centers, and you have five state centers. Correct. Let's suppose this process goes on for the next 10 to 15 years. Hopefully not. And you get down not just litigation. Oh, the process. The process, not the litigation. I'll be long gone by then. But, you know, 10, 15 years from now, you end up with 200 people who are still in institutions from all over the state, from Erie to Delaware County. Who knows? I mean, there was actually testimony. Do you have enough flexibility to determine where you put them? Well, certainly. And I think part of the problem here is it's not the plaintiffs that are trying to remove that flexibility from the department, it's the appellants. Because what the appellants are trying to assert, and the department believes incorrectly as a matter of law, is that they have a right to institutional placement. They have a right to institutional care under Olmstead. And, in fact, Olmstead, Justice Ginsburg in Olmstead, said exactly the opposite when in a footnote, when she was responding to the dissent, said, we're not establishing any requirement on the part of the state that the state has to provide any level of care. Their position was they had a right to be heard. And as to what the settlement should be, you're putting words in their mouth. No, actually, sorry, Your Honor. Judge Cowen, the reason that they're saying that they have a right to be heard is because they're claiming that they have a right to stay in the institution. That is what they're claiming. And that is the basis of what they're claiming. Well, their position, though, is that might be so, but their position in litigation is they had a right to be heard to show that the class was improperly constituted and that the settlement is not appropriate. What it should be or shouldn't be is a merits determination. Their position is they had a right to be heard as to what the class was, and they were never given that opportunity. And the only way that the court can accept that position is that if the court does what the district court properly was unwilling to do, which is to override or ignore the state's, the policy decision, the judgment exercised by the state's professionals and the state's policymakers, that it is, in fact, the case that every person with an intellectual disability can be served in the community with appropriate supports and services. That is, in fact, the longstanding – Just a minute. Just to take your statement. Are all community-based centers equipped to handle any resident from the state care, or will there be a specific community – are they – if they move everyone out of the state care, are the community services sufficient to handle all those people? One of the things that I did want to talk about during the course of my presentation was the process whereby services and programs will be developed for the people who are in the state centers because although that process, I believe, informed the district court's decision, he didn't talk about it in the opinion. It's a meticulous, painstaking process that brings together everybody who will be involved, including parents, guardians, involved family member, anybody else who the resident says, the people from the county where the person's going to be going, potential providers possibly. They come together. They sit down. Of course, the people at the facility, as well as the people that the person is going to be going to in the community, they sit down and they say, what will Doris need? And then they say, Doris needs X, Y, and Z. She's going to need 24-hour care. She's going to need nursing services. She's going to need habilitation. She needs the day program, et cetera. Okay. Do we have that in the community? No. You know what? We don't have that in your county. So we're going to have to develop that in your county. So it looks like it's going to take a little longer than usual to get Doris out of the center, but we are going to get her out, and she is going to have the appropriate services when she gets out. What happens if Doris makes a very fairly clear statement that I don't want to go to a community center? She doesn't go. Either herself or through guardians? She doesn't go. How about if Doris is severely impaired and can't verbalize it? In that situation, Your Honor, what we are saying is pursuant to the policy that is frankly supported, if not directed by federal law, as well as the literature in the community, that person, the option for that person is to stay institutionalized, right, not realize the hope that the ADA brought to disabled people, or to give it a shot in the community. And what the department is saying and has said for the last 20 to 30 years is that people deserve a shot in the community, and we are going to do what we need to do to give them that shot. Who is we? The Department of Public Welfare. Sorry. How about if the guardian says no? If the guardian says no, Olmstead made clear that people who oppose moving to the community don't have to go, okay? So clearly the department is going to honor that choice. And if the person cannot make a choice cognitively, they are unable to make the choice, they automatically make the choice by default. Because... Wait a minute. You said that they would be represented by a guardian. No. What I said is that... I misunderstood you. Let me say it this way. What I meant to say is in that situation, the facility director under state statute in the Department of Public Welfare statements of policy interpreting that statute steps in as the guardian. Not just with respect to whether or not a person moves into the community, but for every health care decision or every decision, frankly, that's made on behalf of that person. And Judge Fischer, can I go back and answer your question that you asked Mr. Meek about what's the big difference here? Okay. The difference is, and this is why I said that the only way the court can accept Mr. Solano and the appellant's argument is if they just disregard the longstanding policy of the department. And the reason is the class is defined to say or to be people who live in the state centers, who can live in the community with appropriate supports and services, and who don't oppose discharge, okay? Mr. Solano's point, not that I intend to speak for him, but my understanding of Mr. Solano's point is that you can't make a decision about whether or not somebody can live in the community unless you're doing an individualized determination of whether or not somebody can live in the community, and that defeats cohesiveness, and therefore you can't have a class.  So that the assessment of what services and supports are needed happens after the decision is made that they go into the community, not before to make the decision about whether or not they go into the community. So the same process will happen, but legally there's a huge difference because the ---- But you acknowledge right now there are facilities in the community to take care of something. But the department is willing ---- Let me finish my question. I'm so sorry. I am so sorry, Judge Powell. You acknowledge, as I think of the briefing, that there are not facilities in the community to take care of these severely disabled people. No. You have to look forward to doing that in the future. No, no, no, no, no. What I meant was there are, there might in fact currently be for one person or another who is currently at a state center, not a vacancy in the community such that the department would have to develop in conjunction with the county and providers a new program, buy a new house, set it up, staff it, et cetera, et cetera. It is absolutely the case, and there was a lot of testimony at the fair hearing to this effect, that it is absolutely true, and I think that appellants and a lot of the objectors really don't realize this, but it is absolutely the case that every single person who has served in the state center has a counterpart in the community, and we have a whole variety of services available to people to support them in the community so that it is not true, as I think the appellants argued in their brief, that somebody who needs 24-hour supervised care cannot live in the community. That is just not true because there are a lot of people in the community who have 24-hour care. How much money is the state going to allocate percentage-wise between state care and community care? I'm sorry, I don't know the answer to that question. Just about everything will, though, be allocated, the overwhelming majority, to community care. I believe it already is. I mean, we spend over a billion dollars on community care. And how much do they spend on state care? I would be guessing. I really don't know, actually. A percentage of that, how much percentage-wise? Well, if you think it costs, I'm going to give you numbers that I do know. It costs about $250,000 a year to serve somebody in a state center, and there are approximately 1,100 people in the state center. And how much would it cost to care for that person in community care? It depends on the person. Most of the people at the state centers are going to require a lot of care. So it would be less expensive than it would be in state care. Yeah, well, it would ultimately be less expensive, but one of the arguments that the department made in the district court in response or at summary judgment was that there is a transition period when, in fact, it costs more money because you have to fund both the state centers as well as the community care, and the department doesn't really start to realize any savings until enough people leave that it results in a unit closing or possibly a facility closing. And speaking of closures, this settlement agreement does absolutely not speak to, does not contemplate the idea of closures. And there was testimony at the fair hearing that the department has no intent, the Commonwealth has no intent currently to close facilities. Can anybody speak to what's going to happen five or ten years from now? No, but it's not going to be because of this settlement agreement. Thank you, Ms. Lynch. Thank you very much. Mr. Solano. Your Honors, let me try to speak to three issues, individual determinations, the policy questions that Judge Fischer raised, and our standing. On the individual determinations, I just want to be clear because there's been a lot of positions shifting around. The way this settlement works is the department has already determined that everyone is eligible to move to the community, but their professionals, and Olmstead says you look to their professionals, have written into many of these individuals' ISPs statements that those individuals are not. Is there something to suggest that they're not going to do that? Do what, Your Honor? Refer to the ISPs? No, no, that they're going to consult with professionals to determine whether a transfer or move to the community centers is appropriate. What they're going to do, Judge Fuentes, is, as Ms. Leach said, rather than make a determination whether it is appropriate, they've already made that determination. They're going to try to find an appropriate facility in which to place them in the community, but they've already decided that's where they want to put them. Well, they certainly have done that for those who express a desire to go to a community center. Your Honor, they have done that for a great many people, many of whom are not as severely disabled, both medically and mentally, as this population. And so, as Judge Collin points out, the cost of doing this for this population is going to be so high that one of the things we question is its feasibility given the current economic climate. They say we're going to do it, but the feasibility of that is really open to question. So in terms of individualized what they're doing, they're not making an individualized determination whether they should move. They've already determined that for everybody. They're going to move everyone. They're going to move everyone. They're going to try to find an appropriate facility. As far as individualized choice, if somebody is incapable of making the choice and they don't have a guardian or family member, they go on the list. If somebody has a guardian or family member who objects, they don't go on the list until such time as that guardian or family member becomes unavailable, at which time they do go on the list. So if I die and I don't leave an appropriate substitute, Diane goes on the list. If I'm unavailable, and it sounds, you know, draconian, but there's actually testimony saying this is the way this works. So there's not a whole lot of choice there. What they're saying, in effect, is that these people are too disabled to have a right to choice, to choose, and therefore we're just going to put them on the list and move them. If we want to have individual choice, this Court's decision a few months ago in the Powell case about appointing guardians ad litem and having guardians make individual determinations about how susceptible these people are to change is something that could be done. I have a little concern, Mr. Solano, about what I understand you would like to happen, which is to stop everything. You want to go back into the district court and undo this class, put everything to a halt and start all over again, but there would be no class. And I'm wondering about all the people who would be affected by that decision. Could you talk to me about why, as a practical matter, as a policy matter, this makes good sense? As a policy matter, Your Honor, what makes sense is to have everybody individually determined. One of the things that we do not oppose is creation of an appropriate protocol so that those people who choose to move will be able to do so. What we do oppose is putting everybody on the list and saying they automatically have to choose. So a protocol can be in place. The idea of individual assessment to you is inconsistent with a class format. Yes, Your Honor. I mean, because I think everything, if you're going to say the relief is that they have to be relocated, that requires an individualized determination as to whether it's appropriate and whether they want that to happen. It's not appropriate for everyone, Your Honor, because we have testimony here about how many of these people have lived here for decades. This is their home. This is their community. They call the staff mommy. These people, some of them are just not susceptible to change. We have testimony in one of the objection letters about how they moved to a different building and the person stopped eating. These are very serious decisions that you have to take an individualized look at, and that brings me to policy. Judge Fischer, nothing stopped DPW over all of these years from deciding that a particular individual would do better in the community and we ought to move them there. And if somebody didn't agree with that, somebody could, you know, file a suit and we'd be here under rules of administrative discretion and all of that sort of stuff, but it would be DPW. What happened here, though, is instead they subjected themselves to a court order so that now it's not a matter they're saying, well, you know, the court is making us do it. And so now as a result the legislature has got to fund this, not the way the legislature and the policy makers decide it, but the way the court order has done. We suggest, Your Honor, that that makes no sense. Senator White talked about this at the hearing about the budget problems that the state is facing and how it just makes no sense from a policy matter. And finally, Your Honor, I suggest that we do have standing because the settlement affects us directly and because the class is defined as those who do not oppose or would not oppose, we're all willing to agree that we may at some point not oppose if this is done right in terms of the settlement we object to. Thank you, Your Honor. One question. Yes, Your Honor. If we were to revamp it to the district court and with an order that you were properly an intervener at that level, would it be such a fait accompli that you get automatically the same results? I mean, you know, district judges have been swayed. I mean, I've reversed myself a number of times based on information which I did not consider or improperly considered. So do you think it's a futile gesture not to decide the matter here rather than to send it to the district court? Judge Cowan, I would never suggest that Judge Jones would not listen to what this court has to say and decide appropriately. Of course he would. Your Honor, my suggestion was simply that it was unnecessary because I think the record is already clear as to how it ought to be decided. But we certainly, you know, are not suggesting that Judge Cowan would not do the right thing if it were appropriate. I think, you know, but I think in terms of fait accompli, I thought it was telling that one of Mr. Meek's responses to Your Honor's question about where is the prejudice is he said, well, if you let them in, the class is going to get decertified. I think it pretty much shows that there's really not a whole lot of basis to support this class. Thank you, Your Honor. Mr. Solano, thank you very much. Mr. Meek and Ms. Walsh, thank you. It's a very difficult case. We'll take the case under advisement.